436 A.2d 147

Rexford LAUDENBERGER, Appellant,

v.

PORT AUTHORITY OF ALLEGHENY COUNTY, and
Arthur R. Carter,

**and**

**Frederick E. Bucheit.**

Supreme Court of Pennsylvania.

Argued March 2, 1981.

Decided Oct. 29, 1981.

Homer W. King, Pittsburgh, for appellant.

David S. Shrager, Shrager, McDaid & Loftus, P.C., Philadelphia, for amicus curiae—Pa. Trial Lawyers Association.

Warren G. Ferry, Arthur R. Carter, Pittsburgh, for Port Authority.

James R. Coyne, Pittsburgh, for Frederick E. Bucheit.

Edward P. Zemprelli, Clairton, for amicus curiae—Insurance Federation of Pennsylvania.

Theodore W. Flowers, Ronald J. Restrepo, Philadelphia, for amicus curiae—Ins. Co. of N. America.

Before O'BRIEN, C. J., ROBERTS, NIX, LARSEN, FLAHERTY and KAUFFMAN, JJ.

## OPINION OF THE COURT

O'BRIEN, Chief Justice.

Today we are called upon to determine the constitutionality of Pa.R.C.P. 238, promulgated by this Court pursuant to our constitutional rule-making authority. Rule 238 pertains to prejudgment interest granted in certain instances to plaintiffs who receive jury verdicts in excess of any settlement offer made by a defendant prior to trial. The trial court in the instant case held this rule to be unconstitutional and refused to remold the verdict in accordance with Rule 238.

This rule is attacked from several directions. The authority of the Supreme Court to formulate such a device as this is initially questioned. The rule is also subjected to allegations that it violates the standards of due process and equal protection as guaranteed by both the Pennsylvania and the United States Constitutions. We find that Rule 238 withstands all objections, and reverse the order of the trial court.

### I.

The Supreme Court of Pennsylvania is empowered to: "prescribe general rules governing practice, procedure, and the conduct of all courts ... if such rules are consistent with this Constitution and neither abridge, enlarge, nor modify the substantive rights of any litigant ..."

Pa.Const. art. V, § 10(c). Pursuant to this power, this Court promulgated Pa.R.C.P. 238 on November 20, 1978, effective April 15, 1979.[1] Rule 238 states in part:

"(a) Except as provided in subdivision (e), in an action seeking monetary relief for bodily injury, death or property damage, or any combination thereof, the Court ... shall

"(1) Add to the amount of compensatory damages in the award of the arbitrators, in the verdict of a jury, or in the court's decision in a nonjury trial, damages for delay at ten (10) percent per annum, not compounded, which shall become part of the award, verdict, or decision;

\* \* \* \* \* \*

"(e) If a defendant at any time prior to trial makes a written offer of settlement in a specified sum with prompt cash payment to the plaintiff, and continues that offer in effect until the commencement of trial, but the offer is not accepted and the plaintiff does not recover by award, verdict or decision, exclusive of damages for delay, more than 125 percent of the offer, the Court or the arbitrators shall not award damages for delay for the period after the date the offer was made ... ."

The trial court declared this rule to be unconstitutional, contending that it involves a substantive right and is therefore beyond the procedural rule-making authority of the Supreme Court. In order to determine if this Court did indeed over-extend its authority, we must review the above rule and decide whether it "abridges, enlarges, or modifies" any substantive rights or if the rule governs elements of practice and procedure in tort cases.

The attempt to devise a universal principle for determining whether a rule is inherently procedural or substantive in nature has met with little success in the history of our jurisprudence. In addressing this issue, the Supreme Court of the United States attempted to define procedural law as:

1. A dissent was filed by Justice Roberts. See 480 Pa. XLI (1978).

"the judicial process for enforcing rights and duties recognized by substantive law and for justly administering remedy and redress for disregard or infraction of them." *Sibbach v. Wilson & Co.*, 312 U.S. 1, 14, 61 S.Ct. 422, 426, 85 L.Ed. 479 (1941). Unfortunately, this analytic determination would only be useful if "substance" and "procedure" were two "mutually exclusive categories with easily ascertainable contents." *Sibbach v. Wilson & Co., supra* at 17, 61 S.Ct. at 428, (dissenting opinion by Frankfurter, J., in which Black, Douglas and Murphy, JJ., concurred.)[2] Rather, "[t]he demarcation between procedure and substantive rights frequently is shadowy and difficult to determine."[3] Procedural law is undeniably an integral thread in the fabric of the law. As threads are woven into cloth, so does procedural law interplay with substantive law. Together, they create a cohesive whole. However, it is this very proximity which often leads to difficulty in identifying one thread as procedural and another as substantive. As Justice Rutledge once observed:

"[I]n many situations procedure and substance are so interwoven that rational separation becomes well-nigh impossible. But, even so, this fact cannot dispense with the necessity of making a distinction."

*Cohen v. Beneficial Industrial Loan Corp.*, 337 U.S. 541, 559, 69 S.Ct. 1221, 1231, 93 L.Ed. 1528 (1949), (Rutledge, J., dissenting.) Such is the position in which we currently find ourselves. In seeking to unravel this Gordian knot, we must not be swayed by simplistic solutions. One noted legal scholar cautioned:

"The tacit assumption that the precise point at which the line between the two is to be drawn is the same for all purposes . . . is of course connected with the other assumptions . . . namely, that the 'line' is to be 'discovered'

**2.** *See, Boggs v. Blue Diamond Coal Co.*, 497 F.Supp. 1105, 1121 n. 82 (E.D.Ky.1980) where the court stated, "the *Sibbach* test, as worded, leaves a number of gray areas, because it is circular, defining procedure as a means of protecting substantive rights, without providing a test for the latter."

**3.** 3 *Cyclopedia of Federal Procedure* § 8.12 (1967).

rather than 'drawn' and that it can be located without keeping in mind the purpose of the classification. If once we recognize that the 'line' can be drawn only in the light of the purpose in view, it cannot be assumed without discussion that as our purposes change the line can be drawn at precisely the same point."

W. Cook, *Logical and Legal Bases of the Conflict of Law* 158–159 (1942). We must therefore seek to determine the purpose of the rule in order to properly characterize its nature.

■ In September, 1978, the Civil Procedural Rules Committee proposed Rule 238 to this Court for its review and promulgation. In the accompanying explanatory comments, the Committee stated:

"The judicial system has long been vexed by the problem of congestion and delay in the disposition of civil actions for bodily injury, death or property damages pending in the trial courts. Various techniques, such as compulsory arbitration, have helped to dispose promptly of the bulk of such cases in amounts under $10,000 in Philadelphia and Allegheny Counties and under $5,000 in other counties which have adopted compulsory arbitration. Nevertheless, there is still a considerable residue of socalled major cases not presently subject to arbitration. There are also the appeals from arbitration which require further proceedings in the trial court.

"Statistics show that . . . [t]hirty-eight percent are settled without going to trial. Some are settled through pretrial conciliation techniques, but in too many cases meaningful negotiations commence only after a trial date is fixed or on the courthouse steps or in the courtroom, thus leading to delay in the disposition of cases and congestion in the courts. The present practice provides no incentive for early settlement.

"In the usual civil action for bodily injury, death or property damage there is *no compensation* to the successful plaintiff and no sanction against the defendant for the long delay between commencement of the action and the trial."

8 *Pa. Bulletin* 2668 (1978). These explanatory notes have not been officially adopted or promulgated by this Court, nor do they constitute part of the rule. However, they indicate the spirit and motivation behind the drafting of the rule, and they serve as guidelines for understanding the purpose for which the rule was drafted.

■ Rule 238 awards damages for delay only in cases where the defendant made no settlement offer prior to trial or where the defendant made an offer of settlement which was 25% less than the amount of the jury verdict. Such language clearly reflects a primary desire to encourage pre-trial settlement. In those instances where the settlement offer is not accepted and the jury verdict does not exceed the offer by 25%, the interest is only computed up to the date of the settlement offer. By tolling the running of interest, this provision demonstrates the prominent goal of fostering *early* settlements. Undeniably, this rule serves to compensate the plaintiff for the inability to utilize funds rightfully due him, but the basic aim of the rule is to alleviate delay in the disposition of cases, thereby lessening congestion in the courts.

This objective is even more visible when compared with pre-judgment interest rules in other states. New Jersey's Rule 4:42–11, which also has been subjected to procedural-substantive scrutiny,[4] uniformly provides interest at 6% per annum on the amount of the jury verdict or award from the date the lawsuit is filed or six months after the tort, whichever is later. Successful plaintiffs are compensated for delay whether they receive and reject any reasonable settlement offers or not. There is no impetus to the plaintiff to accept an early yet reasonable settlement offer, since the interest continues to run after the offer is made.

The restrictions placed on the Pennsylvania rule encourage early disposition of tort litigation in a way that New Jersey's rule does not. In Pennsylvania, defendants may protect themselves from exposure to pre-judgment interest

4. *Busik v. Levine*, 63 N.J. 351, 307 A.2d 571 (1973), *appeal dismissed*, 414 U.S. 1106, 94 S.Ct. 831, 38 L.Ed.2d 733 (1973).

by making a reasonable written settlement offer in a timely fashion. Should the plaintiff reject it and not recover an award 25% greater than the offer, the defendant is assessed interest only from the date on which the complaint is filed or one year from the accrual of the action, whichever is later, up to the date of the settlement offer. Thus, the format of Rule 238 is responsive to its fundamental goal of prompting meaningful negotiations in major cases so as to unclutter the courts.

■ The promulgation by this Court of a pre-judgment interest rule is founded upon both constitutional authority and an absolute duty to the public. In 1968, the Judiciary Article of the Pennsylvania Constitution was altered to grant the Supreme Court "the power to prescribe general rules governing practice, procedure, and the conduct of all courts." Art. V, § 10(c).[5] Further, this provision declared that "[a]ll laws shall be suspended to the extent that they are inconsistent with the rules prescribed under [this] provision."

■ We have held in the past that this constitutional grant of authority is complete. "[T]he power to make rules is that of the judiciary and the judiciary alone." *In Re 42 Pa.C.S. § 1703*, 482 Pa. 522, 532–33, 394 A.2d 444, 450 (1978). We found in *In Re 42 Pa.C.S. § 1703, supra,* that a statute making the Public Agency Open Meeting Law applicable to the Supreme Court while exercising its rule-making authority was unconstitutional as a violation of the separation of powers doctrine. In a letter addressed to the Governor, we observed that:

> " 'the Pennsylvania Constitution gives the state's Supreme court exclusive power to establish rules of procedure for state Courts' and that 'the legislature is *without power to control procedure.*' "

---

**5.** Prior to 1968, the General Assembly had explicitly granted restricted rule-making authority to the Supreme Court. This grant was originally made in the Act of June 21, 1937, P.L. 1982, No. 392, and was amended by the Act of March 30, 1939; P.L. 14, and the Act of August 25, 1959, P.L. 751. Codified as 17 P.S. § 61, it was repealed by the Judiciary Act Repealer Act, Section 2, No. 1978–53.

*In Re 42 Pa.C.S. § 1703, supra,* 482 Pa. at 529, 394 A.2d at 448, quoting *Garrett v. Bamford,* 592 F.2d 810, 814 (3d Cir.1978). The sole responsibility for the administration of the judicial system and all the procedural problems inherent therein devolves upon this Court. Consequently, it is not the legislators who are held accountable by the public for the efficient and orderly administration of the courts, but the judiciary itself.[6]

The Civil Procedural Rules Committee conducted a study of major cases in the Pennsylvania judicial system which were not subject to arbitration. Statistics revealed that only 38% go to trial; only 25% culminate in a verdict. Most cases which do settle prior to trial only do so very close to the scheduled trial date.[7] The delay in disposition of cases emasculates the judicial system's ability to hear those cases which must be litigated. Rule 238 fulfills this Court's obligation to the legislature and to the public to effectuate prompt, expeditious trial and settlement of cases.

The trial court opinion ignores the procedural basis for Rule 238 and contends that this pre-judgment interest rule is substantive in nature. In support of its position, it relies upon federal diversity and conflicts of law cases, where interest as an element of damages has been characterized as substantive law, as well as the fact that other states with similarly provided pre-judgment interest have had such rules adopted for the most part by the legislatures.

Appellees, apparently unaware of the Supreme Court's belief that "the line between 'substance' and 'procedure' shifts as the legal context changes," *Hanna v. Plumer,* 380 U.S. 460, 471, 85 S.Ct. 1136, 1143, 14 L.Ed.2d 8 (1965), also refer us to federal diversity cases which have recognized the substantive nature of pre-judgment interest rules.

According to the mandate of *Erie R. R. Co. v. Tompkins,* 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938), federal courts

---

**6.** Levin and Amsterdam, *Legislative Control Over Judicial Rule-Making: A Problem in Constitutional Revision,* 107 U. of Pa.L.Rev. 10 (1958).

**7.** Explanatory Comments, 8 *Pa. Bulletin* 2668 (1978).

must apply the forum state's substantive laws, while the federal rules govern the procedural aspects of the case. 3 *Cyclopedia of Federal Procedure, supra* note 3, at § 8.14. Numerous federal courts have ruled that, under the *Erie* doctrine, state pre-judgment interest rules concern substantive rights of the parties and are therefore applicable to diversity cases. *See Plantation Key Developers, Inc. v. Colonial Mortgage Co.*, 589 F.2d 164 (5th Cir. 1979); *Clissold v. St. Louis-S. F. Ry.*, 600 F.2d 35 (6th Cir. 1979); *In re Air Crash Disaster Near Chicago, Illinois on May 25, 1979*, 480 F.Supp. 1280 (N.D.Ill.1979), aff'd., 644 F.2d 633 (7th Cir. 1981); *Glick v. White Motor Co.*, 458 F.2d 1287 (3d Cir. 1972).

Recently, the District Court of Eastern Pennsylvania has considered the applicability of our Rule 238 to diversity cases. In *Bullins v. City of Philadelphia*, 516 F.Supp. 728 (E.D.Pa.1981), Chief Judge Lord amended the plaintiff's judgment to add pre-judgment interest pursuant to Rule 238. In doing so, Chief Judge Lord determined the rule was substantive in nature. While he recognized the Court's rationale in promulgating the rule, he found that application of this rule in diversity cases was more consistent with the intent of *Erie* :

> "An increased efficiency and expedition in the disposition of lawsuits alone is not really an end in itself. The real substantive consideration is to encourage the prompt award of merited and sometimes economically required compensation by a wrongdoer to a victim... The purposes of the *Erie* doctrine are to end discrimination against citizens by non-citizens and to discourage forum-shopping. *Hanna v. Plumer*, 380 U.S. 460, 467 [85 S.Ct. 1136, 1141, 14 L.Ed.2d 8] (1965). Application of Rule 238 to federal diversity cases will serve both goals."

*Bullins v. City of Philadelphia, supra*, at 730. However, in so ruling, the district court conceded that its analysis of the nature of Rule 238 for diversity cases is a separate and distinct concern from the question of whether Rule 238 is procedural or substantive for the purposes of determining the Supreme Court's power to promulgate the rule. Judge

Lord wrote that the *Erie* determination sought to fulfill the purposes of the *Erie* doctrine: to end discrimination against citizens by non-citizens and to discourage forum-shopping. In that context only did he hold the rule to be substantive. Clearly, such a classification, when drawn for its own particular purpose, cannot be considered final for all other intents. *See Kanouse v. Westwood Obstetrical & Gyn.*, 505 F.Supp. 129, 131 (D.N.J.1981).

Appellees also call our attention to nine states which have similar pre-trial interest provisions. Of these states, eight provided this relief via statutory enactments promulgated by their legislatures.[8] Appellees assert that these statutory enactments denote the substantive nature of the subject.[9] However, in order to attribute significance to this legislative involvement in the area of prejudgment interest, it would be necessary to analyze each state's constitution to determine whether the legislature or the judiciary possessed the procedural rule-making authority. Furthermore, each statute would have to be reviewed to ascertain if the provisions were drafted so as to affect substantive rights or if procedural concerns predominate, as in Rule 238.[10] In the interests of judicial economy, we will instead direct our attention to the only state which also possesses a juridical rule of prejudgment interest.

8. See Colorado: Col.Rev.Stat.Ann. 1973 § 13–21–101; Louisiana: LSA–R.S. 13:4203; Michigan: M.C.L.A. § 600.6013; New Hampshire: N.H.R.S.A. § 524:1–6 (Supp.); North Dakota: N.D. § 32–03–05; Oklahoma: 12 Okla.St.Ann. § 727(1); Rhode Island: R.I.Gen. Laws § 9–21–10; South Dakota: S.D.C.L. 1967 Ann. § 21–1–11 for prejudgment interest statutes, and New Jersey Rule of Civil Procedure 4:42–11 for a judge-made rule.

9. It is interesting to note that, of the eight states which have legislative enactments, four categorize these statutes among laws dealing with "Procedure," (Colorado, Louisiana, New Hampshire, and Rhode Island) while two others classify this relief as "Judicial Remedies," (North Dakota and South Dakota).

10. In Louisiana, for example, the state Supreme Court enjoys only supplementary rule-making authority. "[R]ule-making power is entrusted primarily to the legislature, and not to the Courts." Tate, *Rule-Making Powers of Courts in Louisiana.* 24 La.L.Rev. 555, 558 (1963–1964).

As stated previously, New Jersey's rule was similarly tested for constitutional infirmities. In *Busik v. Levine,* *supra* note 4, the New Jersey Supreme Court viewed the rule as an attempt to:

> "induce prompt defense consideration of settlement possibilities. In that meaningful way, prejudgment interest bears directly upon the judicial machinery and the problems of judicial management."

*Busik v. Levine, supra* 63 N.J. at 359–360, 307 A.2d at 576. The court therefore opined that the rule was within its procedural rule-making authority. This authority to "make rules governing . . . the practice and procedure" in all courts was granted to the state supreme court by Art. VI, § 3, of the New Jersey Constitution.

Appellees argue that the above ruling is unpersuasive because the New Jersey Supreme Court enjoys a constitutional grant of power which does not place limitations on the court's substantive law-making ability. In Pennsylvania, this Court is limited by the language of the Constitution to promulgating only those rules which do not interfere with the substantive rights of litigants. Although New Jersey's Constitution does not specify as much, that is not to say that the power of the judiciary is without boundaries. The New Jersey Supreme Court noted as much in *Busik v. Levine,* *supra* at 362, 307 A.2d at 577, when it said:

> "Limitations of course do exist, but they arise, not from the cited section of the Constitution, but from the nature of the judicial process and of the Court's responsibility."

Consequently, there is no substantive distinction between New Jersey and Pennsylvania with respect to the judicial procedural rule-making authority.

Appellees attempt to distinguish *Busik v. Levine, supra* note 4, by stressing that, historically, New Jersey's rules concerning interest upon obligations, claims, and judgments have been judge-made. In Pennsylvania, on the other hand, interest on verdicts and judgments has always been governed by statutes. *See,* for example, 42 Pa.C.S.A. § 8101 (which provides for post-judgment interest). However, the

same could be said for statutes concerning the award of counsel fees, as seen in 42 Pa.C.S.A. § 2503(6). Yet this Court has promulgated numerous rules of civil procedure wherein costs have been imposed, including attorney's fees, to compensate for delays. See Pa.R.C.P. 217 and Pa.R.C.P. 4019. Thus, Rule 238 is simply another step in a continuum aimed at furthering litigation in a meaningful way while protecting the rights of the litigants. *Busik v. Levine, supra* note 4, does not stand on different footing; rather, it furnishes persuasive authority for the power of this Court to promulgate a prejudgment interest rule.

Appellees' fundamental argument is that the rule creates a new duty upon the part of defendants to pay additional damages. They assert the rule enlarges the substantive rights of plaintiffs by compensating them for the loss of the use of money damages during the pendency of the lawsuit, while abridging the rights of the defendants. Consequently, they contend the rule represents a departure from this Court's rule-making authority and must be declared unconstitutional.

The rule undeniably imposes an additional duty upon defendants in the form of prejudgment interest. But what is the essence of this duty? Rule 238 provides compensation to a plaintiff for delay in receiving the monetary damages owing as a result of a defendant's tort. This serves to indemnify the plaintiff for the money he would have earned on his award if he had promptly received it. Such an idea was often followed in cases concerning liquidated damages [11] and breach of contract cases.[12]

In 1970, we extended that doctrine to permit the plaintiff to recover compensation for delay in payment after loss in tort cases. See *Marrazzo v. Scranton Nehi Bottling Co.*, 438 Pa. 72, 263 A.2d 336 (1970). However, we viewed such

---

11. *Girard Trust Corn Exchange Bank v. Brink's, Inc.*, 422 Pa. 48, 220 A.2d 827 (1966); *Carbondale City School District v. Fidelity & Deposit Co. of Md.*, 346 Pa. 491, 31 A.2d 279 (1943).

12. *U.S. v. Bethlehem Steel Corp.*, 113 F.2d 301 (3d Cir. 1940), *aff'd.*, 315 U.S. 289, 62 S.Ct. 581, 86 L.Ed. 855 (1942).

compensation as an issue for the finder of fact, after full consideration of all relevant circumstances. In so holding, we stated:

> " 'the plaintiff will not be fully compensated unless he receive, not only the value of his property, but receive it, as nearly as may be, as of the date of his loss. Hence it is that the jury may allow additional damages, in the nature of interest, for the lapse of time. It is never interest as such, nor as a matter of right, but compensation for the delay, of which the rate of interest affords the fair legal measure.' "

*Marrazzo v. Scranton Nehi Bottling Co., supra,* 438 Pa. at 75, 263 A.2d at 337, quoting *Richards v. Citizens' Natural Gas Co.,* 130 Pa. 37, 40, 18 A. 600 (1889). Although the award for delay of time may be "in the nature of interest," in reality, it is merely an extension of the compensatory damages necessary to make a plaintiff whole. Damages have been defined as "the sum of money which the law awards or imposes as pecuniary compensation, recompense, or satisfaction for an injury done or a wrong sustained as a consequence either of a breach of a contractual obligation or a tortious act." 22 Am.Jur.2d, Damages § 1. The law of damages concerns the just administration of remedies for the disregard of rights recognized by substantive law, which is the definition, according to the Supreme Court of the United States, of procedural law. See *Sibbach v. Wilson & Co., supra.*

Nonetheless, one can always argue, and not unconvincingly, that Rule 238 creates a new substantive right to interest in the plaintiff based upon a secondary, derivative wrong perpetrated by the defendant in delaying settlement.

 Undeniably, Rule 238 embodies both procedural and substantive elements. Its purpose and effect are procedural, yet its performance will touch upon substantive rights of both parties. However, the fact that a rule does involve the substantive rights of litigants should not mean that the rule is an inappropriate topic for Supreme Court rule-making. Most rules of procedure will eventually reverberate to the

substantive rights and duties of those involved. We therefore must agree with our brethren in New Jersey that:

> "an absolute prohibition against rules which merely affect substantive rights or liabilities, however slight such effect may be, would seriously cripple the authority and concomitant responsibility which have been given to the Court by the Constitution."

*State v. Leonardis*, 73 N.J. 360, 375 A.2d 607, 614 (1977). *See also Fehrenbach v. Fehrenbach*, 42 Wis.2d 410, 167 N.W.2d 218 (1969). We certainly do not intend to, and will not, promulgate rules in contravention of the constitutional prohibition against abridging, enlarging or modifying substantive rights. However, to interpret this provision too narrowly effects an equally offensive circumscription of our constitutional duties. As we have stated previously, the legislature is forbidden to act in the field of procedure; we are bound to do so by the terms of our authority. This Court should not be prevented from exercising its duty to resolve procedural questions merely because of a collateral effect on a substantive right. Clearly, Rule 238, when viewed from the perspective of its purpose and goal, contributes to the orderly and efficient administration of justice in Pennsylvania, and must stand.

## II.

█ Rule 238 is also challenged on the ground that it violates both equal protection and substantive due process under the Constitutions of Pennsylvania and the United States.[13]

The requirements of the Equal Protection clause dictate that:

**13.** Appellees' contentions concerning the Equal Protection Clause of the federal Constitution and Art. III, § 32 of the Pennsylvania Constitution may be reviewed simultaneously, for the meaning and purpose of the two are sufficiently similar to warrant like treatment. *Baltimore & O. R. Co. v. Commonwealth, Dept. of L. & I.*, 461 Pa. 68, 83, 334 A.2d 636, 643 (1975), and cases cited therein. *In re Cavill's Estate*, 459 Pa. 411, 329 A.2d 503 (1974); *Moyer v. Phillips*, 462 Pa. 395, 341 A.2d 441 (1975); *Kroger Co. v. O'Hara Township*, 481 Pa. 101, 392 A.2d 266 (1978).

"A classification 'must be reasonable, not arbitrary, and must rest upon some grounds of difference having a fair and substantial relation to the object of the legislation, so that all persons similarly circumstanced shall be treated alike.'"

*Reed v. Reed*, 404 U.S. 71, 76, 92 S.Ct. 251, 254, 30 L.Ed.2d 225 (1971), quoting *Royston Guano Co. v. Virginia*, 253 U.S. 412, 415, 40 S.Ct. 560, 64 L.Ed. 989 (1920). *Vance v. Bradley*, 440 U.S. 93, 99 S.Ct. 939, 59 L.Ed.2d 171 (1979). The concept of equal protection thus demands that uniform treatment be given to similarly situated parties; *Commonwealth v. Kramer*, 474 Pa. 341, 378 A.2d 824 (1977); *Commonwealth v. Webster*, 462 Pa. 125, 337 A.2d 914 (1975). If classifications are drawn, then the challenged policy must be reasonably justified. *Adler v. Montefiore Hospital Ass'n. of Western Pennsylvania*, 453 Pa. 60, 311 A.2d 634 (1973), *cert. denied*, 414 U.S. 1131, 94 S.Ct. 870, 38 L.Ed.2d 755 (1974).

The trial court found Rule 238 to be violative of the equal protection standard for two reasons. First, the plaintiffs and defendants were apparently viewed as similarly circumstanced, yet disparately treated because, according to the trial court, "[t]he rule does not provide for delay damages to be awarded to the defendant if it is the plaintiff who is delaying the action." Secondly, the trial court, even when it conceded that the reason for the rule evolved from this Court's desire to speed cases along and reduce backlog, observed,

"The rule bears no relation to this purpose because the absence of the trial court's discretion eliminates the only opportunity the court system possesses to determine whether delay in fact occurred and who was responsible for it."

■ By arguing that plaintiffs and defendants are unequally treated, the trial court assumes that for equal protection purposes, these two groups are similarly situated. This is simply wrong. Rule 238 obviously creates distinctions between plaintiffs and defendants. The difference upon which the classification rests is that the plaintiffs have

been wrongly injured and have suffered financial losses because of the defendants' action. The losses then become exacerbated by defendants' refusal to settle the lawsuit in a timely fashion. The defendants, on the other hand, have suffered no wrong. They, as the tortfeasors, are not unjustly deprived of compensation during the course of pre-trial delays. On the contrary, it is in the best interests of the defendants to protract the litigation process as long as possible, so that they may benefit from the funds rightfully owing to the plaintiffs.

The crucial question now before us is whether the above distinction advances the objective of Rule 238 in the manner consistent with the precepts of the Equal Protection Clause. Here, the opinion of the trial court falters in its reliance upon the need for the trial judge's discretionary administration of Rule 238 as a deterrent to pre-trial delay. We believe that the operation of the Rule in question bears a fair and substantial relation to its articulated goal—the encouragement of defendants to settle meritorious claims as soon as is reasonably possible. The policy of uniformly adding pre-judgment interest to all judgments where the defendant did not make any offer of settlement, or where the judgment exceeded the offer by 25%, encourages early activity on the part of the defendants to resolve legitimate claims in an expeditious fashion and deprives them of the opportunity to benefit from needless delays and last-minute settlements. In light of the above, we cannot say that the difference in the treatment of defendants is constitutionally invalid. *See Bullins v. City of Philadelphia, supra.*

Appellees extend the argument of the trial court further and contend that the rule is unfairly applied to all similarly situated defendants because it is invoked in those cases where the plaintiff is causing the delays. However, this allegation is unpersuasive, for in those instances where a reasonable settlement offer is advanced and rejected in bad faith by the plaintiff, the running of the pre-judgment interest is tolled as of the date the offer was made. Consequently, a defendant can always protect himself from the

assessment of pre-judgment interest by extending a reasonable settlement offer in a timely manner.

### III.

■ Concomitantly, we do not find Rule 238 to violate substantive due process, as the trial court asserts. The constitutional standard of substantive due process dictates that:

"[A] law which purports to be an exercise of the police power must not be unreasonable, unduly oppressive or patently beyond the necessities of the case, and the means which it employs must have a real and substantial relation to the objects sought to be attained."

*Gambone v. Commonwealth*, 375 Pa. 547, 551, 101 A.2d 634, 637 (1954).

As seen above, the application of the equal protection standard to Rule 238 requires that the substance of the Rule bear a rational relation to the goal of encouraging settlement offers in tort litigation. The touchstone of substantive due process, as with equal protection, is whether the law in question is rationally related to a legitimate state goal, or whether the state action arbitrarily works to deny an individual of life, liberty, or property. *See Rogin v. Bensalem*, 616 F.2d 680 (3d Cir. 1980), and cases cited therein.

We have already indicated that the pre-judgment interest rule serves the purpose for which it was promulgated. We therefore conclude that it satisfies the due process requirements of the Pennsylvania and United States Constitutions.

There can be no question that the efficacious attempt to clear the dockets as soon as possible of those cases which can and should be settled is a legitimate and worthwhile governmental objective. In truth, appellees do not so attack the objective as being less than valid. They do, however, attempt to demonstrate a lack of rational connection between the challenged provision and the stated purpose by arguing that the Rule discriminates between different groups of defendants. Appellees, relying upon the trial court's rationale, stated in their brief:

"Implicit in the Lower Court's reasoning is an awareness of the fact that not all defendants are monolithic insurance companies. Rule 238 also stings uninsured defendants who are without the use of reserve funds for investment. Because an object of the Rule, to prevent insurance companies from reaping windfall profits on funds during the pendency of litigation, is not rationally achieved, Rule 238 must be found to be violative of due process in the substantive sense."

As evidenced by appellees' own language, they misstate the aim of the rule by concentrating their attention on one by-product of the rule. It is true that Rule 238 does disgorge profit on funds placed in reserve by insurance companies for upcoming trials. However, while some defendants may in fact be uninsured, they have nonetheless caused the loss to the plaintiffs by their tortious conduct and owe compensation to their victims. Uniformly, the plaintiffs are the parties prejudiced by the long litigation process; whether the defendants are insured or uninsured does not lessen their loss. The only thing which reduces a plaintiff's loss is an early settlement of his damages. Rule 238 therefore must be viewed as comporting with the constitutional requirements of both equal protection and substantive due process.

We reverse the order of the court below and direct that the verdict be remolded to include damages for pre-judgment interest.

ROBERTS, J., filed a dissenting opinion.

ROBERTS, Justice, dissenting.

The majority's perpetuation of Pa.R.Civ.Proc. 238 serves well to demonstrate that it is often more difficult to confess error than to fall into error in the first place. Rule 238, which should never have been promulgated by this Court, see 480 Pa. XLI (1979) (Roberts, J., dissenting), should now be declared unconstitutional.

## I

Rule 238 is based on the assumption that the problem of delay in trespass litigation can be solved by compelling defendants to settle early through the imposition of "financial incentives." 1 Goodrich-Amram 2d § 238:1. Accordingly, Rule 238(a) requires a court or arbitrators presiding over an action in trespass to

"(1) add to the amount of compensatory damages in the award of the arbitrators, in the verdict of a jury, or in the court's decision in a nonjury trial, damages for delay at ten (10) percent per annum not compounded, which shall become part of the award, verdict or decision"

and to

"(2) compute the damages for delay from the date the plaintiff filed the initial complaint in the action or from a date one year after the accrual of the cause of action, whichever is later, up to the date of the award, verdict or decision."

Rule 238(e) provides:

"If a defendant at any time prior to trial makes a written offer of settlement in a specified sum with prompt cash payment to the plaintiff, and continues that offer in effect until commencement of trial, but the offer is not accepted and the plaintiff does not recover by award, verdict or decision, exclusive of damages for delay, more than 125 percent of the offer, the court or the arbitrators shall not award damages for delay for the period after the date the offer was made."

Thus, a defendant can avoid this mandatory pre-verdict interest only if he is sued immediately after the accrual of the cause of action, guesses the ultimate amount of the factfinder's verdict, and promptly makes a settlement offer which corresponds with the unknown sum.

## II

Pursuant to section 10(c) of the Judiciary Article of the Pennsylvania Constitution, this Court is vested with the authority "to prescribe general rules governing practice,

procedure and the conduct of all courts ...." The same provision of the Judiciary Article expressly provides that rules prescribed by this Court may "neither abridge, enlarge nor modify the substantive rights of any litigant ...." Even a most casual reading makes clear that Rule 238 increases the relief available to a plaintiff by mandating the deprivation of a defendant's property. In contravention of the Constitution, the plaintiff's rights have been enlarged, while the rights of the defendant have been abridged.

## A

Justice Holmes has observed that "legislatures are ultimate guardians of the liberties and welfare of the people in quite as great a degree as the courts." *Missouri, Kansas and Texas Ry. Co. v. May*, 194 U.S. 267, 270, 24 S.Ct. 638, 639, 48 L.Ed. 971 (1904). See *In re William L.*, 477 Pa. 322, 383 A.2d 1228, cert. denied, 439 U.S. 880, 99 S.Ct. 216, 58 L.Ed.2d 192 (1978). Thus, our Commonwealth's substantive law, regulating citizens' day-to-day conduct, has traditionally been determined through legislative lawmaking and common-law decision. The Legislature, with unique factfinding capacities designed not only to correct but also to anticipate social problems, both broadly declares public policies and minutely provides for the details of implementation. This Court regulates day-to-day conduct through judicial resolution of specific controversies, applying common-law techniques to develop an appropriate substantive rule.

Until Rule 238, the availability of interest on judgments had been regulated exclusively by common-law decision and legislative act. At common law, it was determined that the plaintiff "could have execution only for the amount of the judgment without interest. In order to recover that he must resort to a new action." *Stewart v. Peterson's Executors*, 63 Pa. 230, 232 (1869). By the Act of November 27, 1700, the Legislature modified this rule to provide that "[l]awful interest shall be allowed to the creditor for the sum or value he obtained judgment for, from the time the said judgment was obtained till the time of sale, or till

satisfaction be made." 1 Sm.L. 7, § 2, formerly 12 P.S. § 782 (1953). The Act of April 6, 1859, P.L. 381, § 1, formerly 12 P.S. § 781 (1953), extended the availability of interest, making interest run as of the date of favorable verdict. Like the previous legislation, this Act responded to a contrary rule at common law which had been reaffirmed only one year earlier in *Kelsey v. Murphy*, 30 Pa. 340 (1858).

In commenting upon the effect of the Act of 1700, making interest an "incident of a judgment," this Court observed that the interest "is as distinctly a substantive part of the debt as if the obligation to pay it was founded on a contract for interest." *Watson v. McManus*, 223 Pa. 583, 588, 72 A. 1066, 1067 (1909). Rule 238 is as much a modification of the availability of interest as the Act of 1700 and the Act of 1859. Like both Acts, Rule 238 has made pre-verdict interest a "substantive part of the debt." See also *Bullins v. City of Philadelphia*, 516 F.Supp. 728 (E.D. Pa. 1981) (Rule 238 remedy is matter of "substantive" law, to be applied in federal diversity case since its availability in state but not federal forum would promote forum-shopping).

The substantive character of Rule 238 is further demonstrated by the recent decision of this Court in *D'Ambrosio v. Pennsylvania National Mutual Casualty Insurance Co.*, 494 Pa. 501, 431 A.2d 966 (1981). There, this Court declined to permit the remedy of punitive damages for an insurer's allegedly "bad faith" conduct in denying the insured's claim. In so holding, this Court relied heavily upon the fact that, in enacting the Unfair Insurance Practices Act, Act of July 22, 1974, P.L. 589, § 1 et seq., 40 P.S. § 1171.1 et seq. (Supp. 1981), the Legislature had already made "dramatic, sweeping efforts" to curb bad faith conduct. This Court observed:

"There is no evidence to suggest, and we have no reason to believe, that the system of sanctions established under the Unfair Insurance Practices Act must be supplemented by a judicially created cause of action. As one critic of California's approach has observed,

'[t]he California courts have created this "new tort" in an obvious attempt to afford more protection to in-

sureds. However, it has not really been established that there is a need of this additional protection. * * * State insurance departments are intended to serve the public and handle complaints from insureds as to insurer practices on a regular basis. Likewise, state legislatures are capable of prohibiting what are considered to be unfair claims handling practices and of imposing penalties for violations.'

Kircher, Insurer's Mistaken Judgment—a New Tort?, 59 Marq.L.Rev. 775, 786 (1976)."

494 Pa. at 507–08, 431 A.2d at 970.

The majority cannot realistically deny the substantive character of either the Unfair Insurance Practices Act, which specifically addresses settlement practices, see, e. g., § 5(a)(10)(vi), or the cause of action proposed and rejected in *D'Ambrosio.* The Act regulates conduct by imposing duties and sanctions for their breach, while the proposed cause of action would have enlarged the remedies of the insured.

There can be no basis for viewing Rule 238 any differently. As is recognized by all parties to this controversy, and must be recognized by this Court, the obvious target of Rule 238 is insurance carriers. Like the Unfair Insurance Practices Act and the cause of action proposed in *D'Ambrosio,* Rule 238 prescribes norms for the conduct of insurance carriers and remedies to the insured for departures from the norms.*

B

By expressly denying this Court authority to fashion substantive law through rulemaking, our Constitution contemplates that the fashioning of the rules governing the

---

* See also Pennsylvania No-Fault Motor Vehicle Insurance Act, Act of July 19, 1974, P.L. 489, § 106(a)(2), 40 P.S. § 1009.106(a)(2) (Supp. 1981) (no-fault benefits statutorily deemed "overdue" where not paid within thirty days after insurer's receipt of reasonable proof of loss; "overdue payments" bear interest at rate of 18%); *Hayes v. Erie Insurance Exchange,* 493 Pa. 150, 425 A.2d 419 (1981) (§ 106(a)(2) of No-Fault Act reflects rationally based legislative judgment, not in violation of "substantive due process").

everyday conduct of the citizens of this Commonwealth will remain a shared function of the common-law tradition and legislative lawmaking. Our rules are not to contravene substantive rights developed on a case-by-case basis and by legislation. Rather, the rules may only erect and adjust the machinery for the enforcement of those substantive rights.

Recent legislative approval of the Act of 1859 and cases of this Court deferring to the legislative judgment make interest available as of the date of favorable verdict. See 42 Pa.C.S. § 8101; *Waugh v. Commonwealth*, 394 Pa. 166, 146 A.2d 297 (1959); *City of Carbondale School Dist. v. Fidelity & Deposit Co. of Maryland*, 346 Pa. 491, 31 A.2d 279 (1943). However, neither this recent legislation nor our case law supports Rule 238's extension of the availability of interest to the period before verdict. It is utterly inappropriate for this Court, by procedural rule, to create substantive rights and obligations lacking legislative or common-law support.

It is equally inappropriate that the Rule is perpetuated in light of this Court's recent observation in *D'Ambrosio*. There, this Court stated:

> "Surely it is for the Legislature to announce and implement the Commonwealth's public policy governing the regulation of insurance carriers. In our view it is equally for the Legislature to determine whether sanctions beyond those created under the [Unfair Insurance Practices] Act are required to deter conduct which is less than scrupulous."

494 Pa. at 508, 431 A.2d at 970. Surely under the guise of procedural rulemaking this Court cannot create rights and obligations which by decision it has recently declined to establish.

It is most inappropriate for this Court to have selected a rate of interest of .10%. The selection of a rate of interest of 10% is nothing more than a judicial experiment in an area long recognized to be within the exclusive province of the Legislature. The Legislature has determined that rates of interest on verdicts and judgments shall not exceed 6%. See, e. g., Act of January 30, 1974, P.L. 13, §§ 201 & 202, 41

P.S. §§ 201 & 202 (Supp.1981); Act of May 28, 1858, P.L. 622, § 1, formerly 41 P.S. § 3 (1971). As in *D'Ambrosio*, the expert judgment of our co-equal branch may not be ignored or overridden by this Court.

## C

By reserving substantive lawmaking to the common-law tradition and legislative lawmaking, our Constitution also seeks to assure that the substantive rules governing citizens' day-to-day conduct are fashioned in the fairest manner possible. Apart from its impermissible intrusion into the legislative province, unconstitutionally creating substantive law by "procedural" rule, Rule 238 imposes arbitrary, unreasonable, and unequal burdens in the absence of tangible evidence that such measures will serve to accomplish the Rule's intended purpose of eliminating delay.

Rule 238 automatically imposes liability without regard to the good or bad faith of the defendant. One defendant can make a settlement offer which would appear reasonable, and yet be subjected to the 10% penalty if the factfinder's award should exceed the offer by 26%. Another defendant, deliberately offering an unreasonably low sum in an effort to force the plaintiff through litigation, will be automatically relieved of the penalty if the factfinder should enter an award a few dollars less than 125% of the proposed settlement.

Rule 238 imposes a penalty even where the factfinder's award is within 125% of the settlement offer. Interest is to be computed either from the date the complaint is filed, or from one year after accrual of the cause of action, whichever is the later date. Rule 238(a)(2). Where a plaintiff files a complaint immediately after the accrual of the cause of action, the defendant has time to evaluate the merits of the complaint and make a reasoned settlement offer. However, where the plaintiff files a complaint more than one year after accrual, the defendant is immediately subjected to the interest penalty, with no "free time" in which to make a reasoned evaluation of the merits.

The unfairness of Rule 238 is further compounded by its imposition of duties and sanctions only upon defendants, and not upon plaintiffs. If the object of the Rule is to discourage delay, the Rule should not only require defendants to make reasonable settlement offers, but also should require plaintiffs to make reasonable demands. Failure of either party to make a reasonable effort to settle should result in the imposition of similar sanctions.

## III

Thus it is clear that, in promulgating Rule 238, a majority of this Court embarked upon a misguided, improper journey, wholly beyond its constitutional procedural rulemaking authority. As a result, the lawmaking function of our Legislature improperly has been usurped. So too, trespass litigants needlessly have been subjected to unfair treatment.

Either of these results would require correction of the Court's error. Together, they compel the need for relief.

Accordingly, to restore not only a proper allocation of the separation of powers but also fairness to litigants, the order of the Court of Common Pleas of Allegheny County declaring Rule 238 unconstitutional should be affirmed.