## Fetter v. Enck

*James M. Potter,* for plaintiff.
*David M. Kozloff,* for defendant.

ESHELMAN, T., *J.*, April 21, 1988 — Defendant has appealed our order of October 6, 1987, which awarded plaintiff the sum of $98,467.60 in delay damages. Pursuant to Pa.R.A.P. 1925, we are issuing this opinion in support of our order.

The facts of this case are as follows: On April 15, 1983, defendant, Richard Lee Enck, ran a red light and struck a car driven by Robert A. Fetter, age 18. Robert A. Fetter died shortly afterwards from massive injuries suffered in the motor vehicle accident. Defendant was subsequently convicted of driving under the influence and homicide by motor vehicle.[1]

In June 1984, plaintiff, Rodney A. Fetter, administrator of the estate of Robert A. Fetter, filed suit against the defendant for wrongful death and survival damages. Prior to the filing of the complaint, the defendant's insurance company, Aetna Casualty and Surety Company, submitted a written structured settlement offer which consisted of a present value of approximately $90,000 and a future value of $120,000. Plaintiff rejected this offer as inadequate.

From July 12, 1984, until November 1985, defendant was represented by attorney Gabriel B. Frank. During this time period the parties exchanged economic actuary reports which set forth projections of the earning capacity of the decedent. Various correspondence ensued between Mr. Frank and the plaintiff's attorney, James M. Potter. On December 6, 1984, plaintiff submitted a demand of $500,000. Discussions and correspondence continued until September 25, 1985, at which time Mr.

---

1. See Berks County criminal docket no. 83121601.

Frank asked Mr. Potter not to list the case for trial until Mr. Frank was able to confer with Aetna Casualty and Surety.

On November 25, 1985, defendant transferred the case from Mr. Frank to attorney David M. Kozloff. On November 26, 1985, Mr. Potter again requested that the case be certified for trial. In October 1986, defendant, through his attorney, David M. Kozloff, made several structured settlement offers. Plaintiff's counsel responded that his client was not interested in a structured settlement and rejected the offers. On October 30, 1986, defendant made a lump-sum settlement offer of $235,000. On November 3, 1986, a jury trial commenced only on the issue of damages since defendant stipulated to the issue of liability. The jury returned a verdict of $27,500 on the wrongful-death action and $410,400 on the survival action, for a total of $437,900.

## DISCUSSION

In 1978, the Pennsylvania Supreme Court enacted Pa.R.C.P. 238, which assessed delay damages against a defendant when a jury verdict exceeded 125 percent of the settlement offer. The rule provided an irrebuttable presumption that any delay caused during litigation was the fault of defendant. The purpose of Pa.R.C.P. 238 was to facilitate meaningful negotiations between the parties which would lead to early settlements. This result would, in turn, alleviate the congested court dockets. *Laudenberger v. Port Authority of Allegheny County*, 496 Pa. 52, 436 A.2d 147 (1981).

The *Laudenberger* court rejected arguments that the awarding of delay damages without a determi-

nation of fault violated a defendant's due process and equal protection rights.

Five years later, in *Craig v. Magee Memorial Rehabilitation Center*, 512 Pa. 60, 515 A.2d 1350 (1986), the court re-examined its affirmance of the awarding of delay damages without a determination of a party's fault. The court concluded that the rule's irrebuttable presumption of placing the blame for delay upon the defendant violated the defendant's right to due process. *Id.* The court suspended the irrebuttable-presumption provisions in the rule and directed the trial courts to make a determination as to whether a defendant was responsible for delay. The *Craig* court was careful to point out that, though the irrebuttable presumption created by the rule was suspended, the rationale behind the rule remained alive. The *Craig* court then directed the trial court to not only consider the time element of a case, but also the fault of each party in creating the delay as well as other pertinent factors. *Id.*

In applying the *Craig* court's guidelines, we find that a period of over three years elapsed from the date of the accident until the jury returned its verdict. Defendant argues that this three-year time period is the result of the normal litigation process and not the result of any delay tactics on its part. Therefore, under its interpretation of the *Craig* court's reasoning, it cannot be assessed delay damages. We disagree with this interpretation of the *Craig* case.

The record indicates that defendant made only one offer of settlement between April 1983 until October 1986. During this time period expert economic reports were exchanged, discovery was conducted and plaintiff made a demand of $500,000 to settle this case. Yet defendant chose not to make any further offers until a trial date neared. During the

month before trial, defendant made a series of structured settlement offers that were rejected by plain-, tiff. Three days before the trial was to commence defendant made a lump-sum offer of $235,000. This is more than twice the amount offered two years earlier.[2]

We also find significant the fact that defendant chose not to contest liability in this case. Defendant was convicted on April 17, 1984, of homicide by motor vehicle and driving under the influence in connection with the decedent's death. Defendant argues that his conviction is irrelevant to the awarding of delay damages. We believe it is highly relevant.

One of the reasons a defendant may choose not to make a reasonable offer of settlement is the genuine belief that defendant is not liable for the accident. When defendant was convicted, the probability of successfully defending on the issue of liability was greatly diminished if not completely foreclosed. Thus, there seems to be no legitimate reason why defendant did not attempt to offer more than its initial settlement offer, which amounted to less than 25 percent of the jury verdict.

These facts clearly demonstrate the trial strategy that defendant undertook in this case. Defendant simply decided not to engage in any serious negotiations in the hope that a congested court docket would prevent a prompt trial. Only when the trial date neared did defendant engage in any serious negotiations. This is the exact type of behavior that Pa.R.C.P. 238 was designed to prevent.

Defendant seeks to interpret the *Craig* court ra-

2. As we stated earlier in our opinion, the first offer made by defendant had only a present value of $90,000, whereas the offer of October 30, 1986, had a present value of $235,000.

tionale in such a way is to circumvent the goals of rule 238, which is to encourage prompt settlement and alleviate the congested court dockets. If this court were to adopt defendant's position, future defendants could refuse to settle a case on reasonable terms and simply wait until a case is called to trial before negotiating. In many instances this could result in a postponement of payment of up to four or five years. During this time period a defendant would be earning interest that would help to defray any obligation incurred from a verdict.

In summation, we find defendant purposely did not engage in any meaningful negotiations to settle this case for nearly three years. Due to defendant's refusal to bargain seriously, plaintiff was deprived of his entitled funds. Therefore, under the *Craig* rationale, delay damages should be imposed.