# Machado v. Harrisburg Hospital

C.P. of Dauphin County, no. 4950 S 1996.

*Ronald L. Wolf,* for plaintiff.
*Steven D. Snyder,* for defendant Holy Spirit Hospital.
*Evan Black,* for defendant Caruso.
*Kendra McGuire,* for defendant Harrisburg Hospital.

KLEINFELTER, *P.J.,* February 2, 2001—Before the court for disposition is the petition for delay damages submitted by plaintiff Linda Machado. At the conclusion of a trial that took place March 27 to April 5, 2000, Mrs. Machado, her daughter Ashley, and the estate of her late husband Howard M. Machado received an award of $3,072,426 in this medical malpractice action.

The jury award included damages resulting from a survival action on behalf of the estate of Mr. Machado, and a wrongful death action brought by Mrs. Machado on behalf of herself and her daughter. Under the survival action, Mr. Machado's estate received a molded verdict of $647,426, consisting of lost wages and pain and suffering. Under the wrongful death action, Mrs. Machado and her daughter Ashley received $275,000 for loss of financial contributions. They also each received damages for loss of consortium in the amounts of $650,000 and $1,500,000, respectively. The jury apportioned the negligence of the defendants at 75 percent for Holy Spirit Hospital and at 25 percent for Garson M. Caruso, M.D. At trial, defendant Harrisburg Hospital stipulated that

Dr. Caruso was at all pertinent times acting within the scope of his employment at the hospital. Defendants made no offer of settlement prior to the trial.

During the course of the trial, Mrs. Machado entered into a $1,000,000 settlement with Holy Spirit and the Medical Professional Liability Catastrophe Loss Fund (CAT Fund), the defendants' excess insurance carrier. The CAT Fund settlement agreement included the following terms:

"(1) Plaintiff is willing to forgo any additional payment by the Medical Professional Liability Catastrophe Loss Fund . . . on behalf of any or all defendants in consideration for the promise of payment of $1,000,000 by the Medical Professional Catastrophe Loss Fund . . . on behalf of defendant Holy Spirit Hospital. The amount promised to be paid by the fund shall not become payable until December 29, 2000. Additionally, it is further understood that the settlement will be contingent on the signing of a standard fund release,[1] which contains a confidentiality clause.

"(2) It is understood and agreed that plaintiff will not seek recovery of personal assets of any defendants involved in this case.

"(3) It is further understood that settlement with the fund has been achieved, therefore plaintiff is foregoing any delay damages and/or post-judgment interest relative to any layer of fund coverage." (Letter to Ronald L. Wolf, Esquire, from Lew Wolfgang, attorney examiner

---

1. The terms "a standard fund release" were deleted and "a mutually acceptable agreement" was substituted and initialed by Mrs. Machado's counsel, Ronald L. Wolf, Esquire.

for the Medical Professional Catastrophe Loss Fund, dated April 3, 2000.)

The pertinent post-trial procedure began with Mrs. Machado's timely petition for delay damages, filed on April 12, 2000. In answer to our April 13 rule to show cause, both Harrisburg Hospital/Dr. Caruso and Holy Spirit submitted answers with new matter on April 24, 2000. Thereafter, on May 1, 2000, we received a motion for leave to file an amended answer with new matter from Holy Spirit, as well as an amended answer filed the same day, without leave of court. A memorandum of law was included. Mrs. Machado filed replies to both Harrisburg Hospital and Dr. Caruso's new matter and Holy Spirit's amended new matter on May 17. A sur-reply to Mrs. Machado's reply to Harrisburg Hospital and Dr. Caruso's response to her petition for delay damages was filed by Harrisburg Hospital/Dr. Caruso on June 2, 2000. Holy Spirit's sur-reply was filed June 6. Finding no significant factual issues, we decline to grant a hearing on the matter pursuant to Pa.R.C.P. 238(c)(1) and we now consider this issue ripe for disposition.

We begin our analysis by acknowledging that Pa.R.C.P. 238 governs the issue of delay damages:

"(a)(1) At the request of the plaintiff in a civil action seeking monetary relief for bodily injury, death or property damage, damages for delay shall be added to the amount of compensatory damages awarded against each defendant or additional defendant found to be liable to the plaintiff in the verdict of a jury, in the decision of a court in a nonjury trial or in the award of arbitrators appointed under section 7361 of the Judicial Code, 42

Pa.C.S. §7361, and shall become part of the verdict, decision or award.

"(2) Damages for delay shall be awarded for the period of time

"(i) [Omitted]

"(ii) in an action commenced on or after August 1, 1989, from a date one year after the date original process was first served in the action, up to the date of the award, verdict or decision.

"(3) Damages for delay shall be calculated at the rate equal to the prime rate as listed in the first edition of the Wall Street Journal published for each calendar year for which the damages are awarded, plus one percent, not compounded.

"(b) The period of time for which damages for delay shall be calculated under subdivision (a)(2) shall exclude the period of time, if any,

"(1) after which the defendant has made a written offer of

"(i) settlement in a specified sum with prompt cash payment to the plaintiff, or

"(ii) a structured settlement underwritten by a financially responsible entity,

"and continued that offer in effect for at least 90 days or until commencement of trial, whichever first occurs, which offer was not accepted and the plaintiff did not recover by award, verdict or decision, exclusive of damages for delay, more than 125 percent of either the specified sum or the actual cost of the structured settlement plus any cash payment to the plaintiff; or

"(2) during which the plaintiff caused delay of the trial."

Our first substantive examination is the validity of Harrisburg Hospital and Dr. Caruso's argument that Pa.R.C.P. 238 is unconstitutional, since its outcome is determinative of whether further proceeding is necessary. The essence of their argument is that Pa.R.C.P. 238 violates due process, equal protection, and goes beyond the rule making authority of our Supreme Court.

We find *Costa v. Lauderdale Beach Hotel,* 534 Pa. 154, 626 A.2d 566 (1993) to be controlling. In *Costa,* our Supreme Court effectively reaffirmed its constitutional analysis developed in *Laudenberger v. Port Authority of Allegheny County,* 496 Pa. 52, 436 A.2d 147 (1981). The pertinent discussion follows.

"In *Laudenberger,* the court held that the former version of Rule 238 did not exceed this court's rule-making authority, nor did it violate the federal and state guarantees of equal protection and substantive due process. The court explained that Rule 238 had two purposes: to encourage settlement and to promote prompt, expeditious trial. The rule therefore was within the court's authority and duty under Article V, Section 10(c) of the Pennsylvania Constitution to 'prescribe general rules governing practice, procedure, and the conduct of all courts.' . . .

"The court acknowledged that the rule had some effect on the substantive rights of the parties because it created a new 'duty' on the part of defendants. However, the court went on to explain that the 'essence of this duty' was merely to extend 'the compensatory damages necessary to make the plaintiff whole.' . . . Delay damages merely compensate a plaintiff for 'the money that he would have earned on his award if he had

promptly received it.'. . . That the rule had some collateral effect on the parties' substantive rights was not sufficient reason to prevent the court from exercising its duty to resolve procedural questions. . . .

"The court went on to find that the rule did not offend equal protection, because the distinction between plaintiffs and defendants was a reasonable one and the rule bore a rational relationship to the goal of encouraging settlement. The court pointed out that the classification rested upon the difference between the situation of plaintiffs and defendants: 'the plaintiffs have been wrongly injured and have suffered financial losses because of the defendants' action.' . . . Similarly, the court found no violation of substantive due process because the rule was rationally related to a legitimate state goal. . . ." *Costa*, 534 Pa. at 159-61, 626 A.2d at 569. (citations omitted) (footnote omitted)

Finally, the court noted,

"Delay damages do not penalize a defendant that chooses to go to court; they simply do not permit a defendant to profit from holding money that belongs to the plaintiff, by requiring the defendant to compensate the plaintiff for the loss of the use of that money during the time the defendant held it. . . . Delay damages are incentive to settle and to avoid delay of trial not because the defendant faces penalty if it chooses not to settle, but because the defendant may limit the size of the compensation award by settling the case or by choosing not to engage in dilatory pretrial tactics." *Costa*, 534 Pa. at 163, 626 A.2d at 570. (citation omitted)

126

Accordingly, we are obliged to follow our Supreme Court in *Costa*, and deem Pa.R.C.P. 238 constitutional.

Now that we have determined the constitutionality of Pa.R.C.P. 238, we must turn to its applicability to the wrongful death award. As indicated, Mrs. Machado and her daughter received a total of $2,425,000 under the Wrongful Death Act.

Defendants cite *Anchorstar v. Mack Trucks Inc.,* 533 Pa. 177, 620 A.2d 1120 (1993), in support of their argument that delay damages as prescribed by Pa.R.C.P. 238 are not recoverable for wrongful death awards since such are only allowed for "bodily injury, death or property damage." Pa. R.C.P. 238(a)(1). We agree.

Factually, *Anchorstar* involved a loss of consortium claim by the wife of a truck driver who sustained injuries as a result of the failure of his truck's defective steering mechanism. We find the analysis in *Anchorstar* applicable to the instant situation:

"The claim filed in the present case by Mr. Anchorstar was plainly one seeking compensation for bodily injury. In contrast, the claim filed by Mrs. Anchorstar was for loss of consortium. A claim for loss of consortium is quite different from a claim for bodily injury. While it stems from the spouse's bodily injury, it is nevertheless a separate and distinct claim. Loss of consortium is a loss of services, society, and conjugal affection of one's spouse. . . . One who has suffered a loss of consortium has not sustained a bodily injury but rather has experienced an injury to marital expectations. Clearly, too, the mere fact that such a claim is joined in the same civil action as a claim for bodily injury does not alter its basic

character as a separate and distinct claim. . . ." *Anchorstar*, 533 Pa. at 180, 620 A.2d at 1121-22. (citations omitted)

Applied to the case before us, it is the estate of Mr. Machado, via an action under the Survival Act that is seeking compensation for his injuries. Under *Anchorstar*, it is this survival action alone that is subject to the imposition of delay damages. Linda and Ashley Machado's wrongful death action is separate and distinct despite its evolvement from the death of Howard Machado. Thus, we find the tenets of *Anchorstar* equally applicable to both the loss of consortium and loss of financial contribution elements of the wrongful death action, in that neither claim prayed for compensation for physical injuries suffered by the plaintiff.

Lastly, we turn to the claim by Holy Spirit that they are not responsible for delay damages on that portion of the verdict payable by the CAT Fund. As noted above, under the survival action, the jury awarded Mr. Machado's estate $647,426—75 percent of which, or $485,570 was assessed to Holy Spirit. Of this total, the first $200,000 is the responsibility of Holy Spirit's insurance carrier, and the balance, $285,570 is picked up by the CAT Fund.

Notwithstanding the foregoing, when the CAT Fund settled with Mrs. Machado on behalf of Holy Spirit during the trial, the settlement agreement (see ¶3, *supra*) clearly provided that "any delay damages and/or past judgment interest" would be waived. Thus, delay damages in this case are limited to the first $200,000 of the survival action against Holy Spirit, as well as the full $161,856 attributed to Harrisburg Hospital and Dr. Caruso.

In summary, we award delay damages as shown in the following exhibit.

| | | |
|---|---|---|
| *Amount subject to delay damages (survival action):* | | *$647,426* |
| Harrisburg Hospital and Dr. Caruso—25% | | $161,856 |
| Holy Spirit Hospital— 75% | | $200,000 |
| ($485,570-$285,570 CAT Fund layer) | | |
| *Delay damages attributable to Harrisburg Hospital and Dr. Caruso* | | |
| 10/21/97 to 12/31/97 | 71 days @ 9.25% | $2,913.42 |
| 1/1/98 to 12/31/98 | 365 days @ 9.5% | $15,376.32 |
| 1/1/99 to 12/31/99 | 365 days @ 8.75% | $14,162.40 |
| 1/1/00 to 4/5/00 | 96 days @ 9.5% | $4,030.21 |
| Total delay damages attributable to | | |
| Harrisburg Hospital and Dr. Caruso: | | $36,482.35 |
| *Delay damages attributable to Holy Spirit Hospital* | | |
| 6/30/98 to 12/31/98 | 185 days @ 9.5% | $9,640.00 |
| 1/1/99 to 12/31/99 | 365 days @ 8.75% | $17,500.00 |
| 1/1/00 to 4/5/00 | 96 days @ 9.5% | $4,980.00 |
| Total delay damages attributable to | | |
| Holy Spirit Hospital: | | $32,120.00 |
| *Total delay damages payable to* | | |
| *the estate of Howard Machado:* | | *$68,602.35* |

Accordingly, we enter the following:

### ORDER

And now, February 2, 2001, upon consideration of the petition for delay damages of plaintiff Linda Machado, the following is hereby ordered.

(1) Defendants Harrisburg Hospital and Garson M. Caruso are directed to remit delay damages to plaintiff in the amount of $36,482.35;

(2) Defendant Holy Spirit Hospital is directed to remit delay damages to plaintiff in the amount of $32,120.20;

(3) There shall be no delay damages assessed against the Medical Professional Liability Catastrophe Loss Fund.