## Wilkerson v. Allied Van Lines Inc.

*Paul R. Anapol*, for plaintiff.

*John J. O'Brien Jr.*, for defendant Allied Van Lines Inc.

*John S. Kokonos*, for defendant Fruehauf Trailer.

KREMER, *J.*, November 19, 1987 — We have before us for consideration, following a remand order of the Superior Court, the question of whether or not delay damages should be assessed and, if so, to what extent.

Plaintiff, Andrew Wilkerson, sustained permanent and massive injuries as a result of a June 16, 1977 motor vehicle accident. He was a passenger in a tractor-trailer owned and driven by Lyle Jordan who is not a party to this action. Defendants are Allied Van Lines Inc. and Fruehauf Trailer.

Suit was commenced against both defendants on March 13, 1979. Allied denied liability and joined Fruehauf. The case came to trial on July 10, 1984 and on July 25, 1984 the jury returned a verdict against Allied and in favor of Fruehauf. The jury awarded damages in the amount of $800,000. The trial court awarded and added damages for delay, pursuant to Pa.R.C.P. 238, in the sum of $382,027.36 for a total molded and amended verdict of $1,182,027.36 entered on July 25, 1984.

Post-trial motions were filed. Following briefing and argument, the trial court overruled the post-trial motions on September 30, 1985. An appeal was taken and the trial court filed its 62-page opinion on March 26, 1986.

On February 6, 1987, the Superior Court, in an opinion by Judge Donald E. Wieand, affirmed the judgment of the trial court. In the meantime, however, the Supreme Court of Pennsylvania, on October 8, 1986 had handed down its opinion in *Craig v. Magee Memorial Rehabilitation Center*, 512 Pa. 60, 515 A.2d 1350 (1986).[1] The Superior Court, therefore, vacated the delay damages portion of the

1. See *Laudenberger v. Port Authority*, 496 Pa. 52, 436 A.2d 147 (1981).

judgment and remanded the case "to the trial court to determine the delay damages, if any, which appellee is entitled to receive." The Superior Court stated, "jurisdiction is not retained pending determination of delay damages." A petition for allowance of appeal was filed in the Supreme Court on March 5, 1987.

Plaintiff filed a petition for assessment of delay damages on February 2, 1987. Allied filed a motion for stay, pending decision on its petition for allocatur in the Supreme Court of Pennsylvania. An evidentiary hearing was held on March 12, 1987. At that hearing defendant requested leave to withdraw its petition for stay, upon condition that the court would forthwith certify for appeal its (anticipated adverse) decision with regard to delay damages.

It is not clear whether a lower court, in such circumstances, can exercise jurisdiction by way of conducting a rule 238 evidentiary hearing. The record remained lodged in the appellate courts when the petition for allocatur was filed, despite the Superior Court's statement of relinquishment of jurisdiction. We decided that the more efficient procedure would be to decide the rule 238 question, so that there possibly could be a single consolidated procedure in the Supreme Court of Pennsylvania. A combination of two factors frustrated our instinct for enabling a single expeditious appeal. We became aware of the fact that the Supreme Court may be considering an amendment or clarification of rule 238. It seemed appropriate to await such action and guidance. Further, following our conduct of a rule 238 evidentiary hearing and following our preparation of an opinion and findings, the automobile of the author of this opinion was stolen on May 29, 1987 containing two briefcases and two folders with extensive miscellaneous papers and about 300

pages of draft opinions in three very extensive matters, including an initial draft of this opinion. That is a depressing experience.

At the rule 238 evidentiary hearing, plaintiff relied upon the record and also submitted a group of exhibits which were stipulated to by defendant. Neither side called any witnesses. Defendant did not offer any explanation whatsoever or reasons as to why it did not respond to plaintiff's reasonable settlement overtures and efforts.

The court makes the following mixed findings of fact and conclusions of law.

(1) These findings of fact are based upon the entire history of the case, the entire record of the case, the exhibits as filed, the arguments of counsel and the court's observations during the entire course of the proceedings.

(2) On March 13, 1979, a complaint was filed in this case against the defendants in the court of common pleas.

(3) Prior to the institution of suit, counsel for plaintiff sent defendants a letter dated March 7, 1979 advising them of his representation of plaintiff. He sent them an advance courtesy copy of the proposed complaint and interrogatories, together with copies of all papers and documents with regard to plaintiff's injuries and damages, including, inter alia, copies of all medical and hospital reports, all bills and an itemization of alleged out-of-pocket losses. In his efforts to timely amicably resolve the matter, plaintiff made a settlement demand of $650,000 from both defendants or one-half from either defendant based on a joint tort-feasor release. The offer was made subject to and open for negotiations.

(4) Defendant Allied did not respond to plaintiff's offer to enter into discussions and settlement nego-

tiations. Defendant Allied rejected all settlement efforts of plaintiff throughout the pleadings, discovery and trial phases of the case.

(5) Defendants were given and had sufficient or all necessary information about the facts of the case, both as to liability and damages, *before* suit was instituted.

(6) The same attorneys represented Allied (and Fruehauf) in the separate case of *Weinberg v. Allied and Fruehauf* in the U.S. District Court, E.D. Pa., CA No. 77-3946. Mr. Weinberg was killed in the same accident in which plaintiff was injured. The *Weinberg* case was settled by Allied for $400,000 on the eve of trial in the federal court. That settlement took place before this *Wilkerson* suit was commenced.

(7) The parties in this case stipulated on September 10, 1979 that all of the depositions taken in the *Weinberg* case could "be used for all purposes" in this case. The discovery in the *Weinberg* case was used in this case because significant aspects of each case were virtually identical.

(8) Plaintiff was not responsible for any inappropriate delay or significant delay in bringing this case forward for trial. Defendant has not made any contention of delay or fault on the part of the plaintiff. Plaintiff did not make any requests for postponement of trial. Plaintiff timely responded to all reasonable discovery requests, complied with the discovery rules and, indeed, made available most or all necessary information *before* suit was instituted. Plaintiff made numerous efforts to settle the case with Allied, all of which were effectively repudiated by Allied.

(9) Defendant Allied was responsible for and caused various delays in this matter. Defendant

frequently did not respond properly to reasonable discovery requests until ordered to do so by the court.

(10) Defendant Allied did not respond to a May 3, 1979 plaintiff's request for admissions (first set) until August 22, 1979, after the court entered an August 3, 1979 order granting plaintiff's motion to strike defendant Allied's answers.

(11) Defendant did not file answers to plaintiff's first set of interrogatories until November 2, 1979 after the court, on October 10, 1979, entered an order granting plaintiff's motion for sanctions and to compel defendant to answer interrogatories. On October 29, 1979 a motion for sanctions filed by Allied to compel answers to deposition questions was denied by Judge Greenberg.

(12) Plaintiff filed a request for admissions (second set) on February 14, 1980. Plaintiff filed a motion to strike defendant Allied's answers to plaintiff's second set of requests for admissions and to compel defendant to answer fully and completely, which was granted by the court on September 16, 1980. Defendant requested a further 10-day extension and then filed its answers on October 10, 1980.

Another order of court was entered on October 9, 1980, for defendant to file full and complete answers to certain interrogatories within 20 days. Answers were not filed until November 5, 1980.

(13) A conference was held on March 27, 1980 with Judge Stanley M. Greenberg with regard to Allied's failure to obey discovery orders and other summary judgment motions pending before the court. The court recommended and explored the possibility of settlement based upon each defendant paying $247,500. All counsel agreed to recommend such settlement. Plaintiff agreed to accept the proposed settlement. Defendant Fruehauf agreed to

accept the proposed settlement and did settle and pay $247,500 on a joint tort-feasor release. Defendant Allied advised that it would not make any settlement offer until after summary judgment decisions were made. Defendant's motion for summary judgment was overruled on October 9, 1980, but no offer of settlement was made.

Plaintiff renewed efforts to settle the case on October 1, 1982, but the defendant made no offer whatsoever. Defendant made no effort to engage in discussions and negotiations.

(14) A memorandum of pretrial conference and case management order was filed on March 10, 1984 and trial was scheduled for July 7, 1984. Trial was postponed at the request of defendant Allied. On May 10, 1984, Allied advised counsel and the court about a last-minute retention of a medical expert and advised that he could not provide a report until early July 1984.

(15) Defendant Allied filed a motion for recusal which was denied on April 10, 1984. The motion was devoid of any merit whatsoever. It served only purposes of delay.

On May 22, 1984, on behalf of a defendant in another matter[2] pending before this court, counsel for defendant filed in the Superior Court of Pennsylvania, at 172 Miscellaneous Docket no. 14, a

2. *Kish v. Unico Majik Markets Inc.*, C.P. Philadelphia County, January term, 1980, no. 952. The petition for writ of prohibition [etc.] is discussed in the lower court's opinion in the consolidated cases of *Koons v. Fisher Industries Inc.*, C.P. Philadelphia County, September term, 1979, no. 4653, and *Koons v. American Hoist and Derrick Company and Mayfran Inc.*, October term, 1979, no. 1025, and *Koons v. Massuto*, March term, 1980, no. 4859, affirmed by the Superior Court of Pennsylvania at no. 2588 and no. 2589, Philadelphia 1984, petition for allowance of appeal is pending in the Supreme Court of Pennsylvania.

"petition for writ of prohibition and mandamus and for expedited consideration" naming the trial judge and the Court of Common Pleas of Philadelphia County as respondents. In the petition, defendant's counsel variously sought to stay all proceedings and to disqualify (recuse) the trial judge etc. with regard to four then pending separate cases, including this *Wilkerson* case. The Superior Court denied defendant's counsel's petition by per curiam order dated August 27, 1984. The petition for writ of prohibition [etc.] was devoid of any merit whatsoever. It served only purposes of delay.

(16) Prior to trial, defendant Allied did not make any settlement offers. It was not until the "eve of trial" that Allied made a verbal offer to settle the case for $400,000. During the course of the trial itself, Allied increased its offer to $500,000 and shortly before the verdict the offer was increased to $600,000. None of the offers were in an amount within 125 percent of the jury verdict. None of the offers were in writing as required by Pa.R.C.P. 238(e).

In recognizing that defendant made no settlement offers whatsoever until the "eve of trial," we must also recognize that the verbal offers made at trial were even more inadequate than the size of the verdict would indicate, because under the law defendant should have also evaluated its risk of payment of delay damages. At the time of trial, the *Craig* case had not yet been decided and defendant was given ample opportunity to settle both the case value and the delay value.

(17) At all times prior to October 8, 1986 (the date of decision of the case of *Craig v. Magee Memorial Rehabilitation Center*), plaintiff had a complete right to believe that his claim for delay damages was accruing and did accrue at the rate of 10 percent per

year until the jury rendered its verdict on July 25, 1984, and defendant reasonably should have believed and expected that in the event of trial and verdict, rule 238 damages would be added, if appropriate, under the terms of rule 238 from the date of the filing of the complaint to the date of the verdict by the jury. After the date of the verdict on July 25, 1984 to the present time, interest accrues at the lesser rate of only 6 percent under applicable statutes.

The complaint was filed on March 13, 1979, prior to the April 15, 1979 effective date of rule 238. Defendant has not contended that interest could only be calculated from April 15, 1979 and we would not have to consider the question. Defendant had ample opportunity to present alternative calculations but chose not to do so. Nevertheless, out of an obligation of fairness, we have decided to recognize and correct defendant's error. Accordingly, we shall reduce our original calculation by interest for 34 days at the rate of 10 percent per year or $7,456. The original calculation of $382,027.36 is reduced to $374,571.36.

(18) Assuming that the court has jurisdiction or is authorized to even consider or question the rate to be imposed under rule 238,[3] it is clear that 10 percent was a reasonable rate to impose for the years 1979 to 1984. Dr. Jerome M. Staller, a very highly qualified forensic economist, submitted the

3. The Supreme Court could consider and adopt a rule modification analogous to that used by the federal government in determining the proper rate of interest to be imposed in tax circumstances. Thus the rate could be set at the prime rate [or any other recognized and easily determinable yardstick] on September 1 [or any other date] of each year. Such a provision would provide for certainty and consideration of annual variations in interest rates.

following table showing the average yield on different types of investments from 1979 to 1984 inclusive.

| Year | 6 Month T-Bills | Corporate Aaa | Bonds Baa | Commercial Paper | Prime rate | Average |
|------|------|------|------|------|------|------|
| 1979 | 11.339% | 10.13% | 11.40% | 13.23% | 14.25% | 12.07% |
| 1980 | 11.374% | 11.94% | 13.67% | 12.29% | 15.27% | 12.91% |
| 1981 | 13.776% | 14.17% | 16.04% | 14.76% | 18.87% | 15.52% |
| 1982 | 11.084% | 13.79% | 16.11% | 11.89% | 14.8% | 13.55% |
| 1983 | 8.750% | 12.04% | 13.55% | 8.89% | 10.79% | 10.80% |
| 1984 | 9.800% | 12.71% | 14.19% | 10.16% | 12.04% | 11.78% |

Note that 1979 rates are those in effect as of October 16, 1979. Compounding $800,000 at the rates listed above from October 16, 1979 through July 25, 1984 would yield interest of $635,808.

(19) During the period from March 13, 1979 (date of filing of the complaint) to July 25, 1984 (date of verdict) defendant had the use of the verdict amount of $800,000. Dr. Staller calculated that a sophisticated investor such as defendant's insurance carrier could have earned compounded interest in excess of $700,000 in contrast to the rule 238 damages of $382,000. The approximately two-year period prior to June 16, 1977 (the date of accident and injuries) to March 13, 1979 (the date of institution of suit) was excluded from the calculations. Interest on plaintiff's verdict amount was retained in full by defendant's insurance carrier.

Dr. Staller's calculations dramatically illustrate the incentive for a defendant to delay settlement or to refuse settlement, if there is no risk for the imposition of prejudgment interest.

## DISCUSSION

In its opinion filed February 6, 1987, the Superior Court remanded the case to the trial judge for an evidentiary hearing "to determine the delay damages, if any, which appellee is entitled to recover" in accordance with *Craig v. Magee Memorial Rehabilitation Center*, 512 Pa. 60, 515 A.2d 1350 (1986).

The Superior Court stated, "Our review of the record discloses that this issue was preserved by Allied at the time of trial and in post-trial motions."

In *Hall v. Brown,* 363 Pa. Super. 415, 526 A.2d 413 (1987) the court (Cavanaugh, McEwen and Montemuro, *JJ.*) per Judge Cavanaugh stated in a footnote:

"In order for the case at bar (which was decided prior to *Craig*) to receive the post-trial delay damages hearing mandated by *Craig*, appellant would have had to raise the issue of the constitutionality of rule 238 in the court below. *Morgan v. Monessen Southwestern Railway Company,* 513 Pa. 86, 518 A.2d 1171 (1986). Since this issue was raised for the first time on appeal; it has been waived, and the mandatory provisions of rule 238 properly apply." *Hall, supra.*

In the more recent case of *Hughes v. GAF Corporation et al.,* 364 Pa. Super. 311, 528 A.2d 173 (1987) the court (Cirillo, President Judge, and Tamilla and Cercone, *JJ.*) per President Judge Cirillo stated:

"In a footnote to our recent decision in *Morgan v. Monessen,* 513 Pa. Super. 86, 99, 518 A.2d 1171, 1177 (1986), we stated that to preserve the issue of awarding delay damages without fault, the attack must be based on 'grounds that it offended due process by failing to provide a forum to assess fault for delay as held in *Craig*.' We note that appellant GAF has preserved the issue of fault in awarding delay damages by claiming in both post-trial motions and its appellate brief that the delay damages awarded against it violate due process and equal protection of the laws. Therefore, according to Morgan the post-trial procedure adopted in *Craig* is applicable in the instant case." *Hughes* at 317, 528 A.2d at 175.

In accordance with the *Morgan v. Monessen, Hall v. Brown,* and *Hughes v. GAF* cases, we have examined the record to see whether the issue of the constitutionality of rule 238 was raised in the court below. It was not raised at any time.

In the "motion for judgment notwithstanding the verdict and in the alternative, motion for new trial," filed on July 31, 1984, defendant in reason no. 35 stated, "The trial judge committed error in granting delay damages for periods of delay caused by the plaintiff and his legal counsel." That assertion did not raise or present a constitutional or due process issue.

Defendant filed "additional reasons for judgment notwithstanding the verdict," in March 1985. There was no reference to any delay damages questions or issues. Defendant filed in the lower court a "concise statement of reasons for appeal pursuant to Pennsylvania Rule of Appellate Procedure 1925(b)." There was no reference to any delay damages questions or issues. In the lower court's original opinion, it was noted that the court addressed and reviewed "all matters complained of on appeal as set forth in Allied's rule 1925(b) statement." No delay damages issues had been presented. Defendant filed in the Superior Court a "designation of parts of the record to be reproduced for purposes of appeal and statement of issues to be presented for review pursuant to Pa.R.A.P., rule 2154." There was no reference to any delay damages questions or issues. Finally, a civil docketing statement was filed in the Superior Court in November 1985. There was no reference to any delay damages questions or issues.

Although we are of the opinion that the record shows that defendant did not properly preserve any rule 238 damages issues for appeal, we nevertheless

also evaluated the conduct of the parties and the entire history and record of the case.

We have also deferred and have not considered a suggestion that rule 238 could not be so altered on the date that the *Craig* decision was handed down by the Supreme Court, so as to have a retrospective effect on the right to damages which accrued prior to that date. An answer to that due process question is not necessary in view of our findings and decision.

Defendant has not contended or argued that plaintiff was responsible for any significant delays in this case. The only contention and argument presented by defendant is a quotation from *Craig v. Magee Memorial Rehabilitation Center, supra,*[4] as follows:

"There is no point in contending that a procedural rule may exist that punishes without fault, and is yet consistent with due process. Neither is there point in arguing that a procedural rule that punishes a defendant qua defendant does not smack of a substantive enlargement of duties owned. We do not overrule the rationales of *Laudenberger,* for they

4. By way of coincidence, it may be noted that the author of this opinion was the original trial judge in the *Craig* case. Counsel for plaintiff in that case was a well-known so-styled "defense attorney." Plaintiff in *Craig* was a severely handicapped wheelchair-bound person. A mistrial was declared at the first trial in order to enable plaintiff's counsel to amend the pleadings, correct errors and misconceptions, and to present a proper case. After the pleadings were amended, the case was again variously listed for trial and on each occasion counsel for plaintiff sought and obtained a continuance. Finally, out of a sense of frustration with the numerous delays occasioned by plaintiff's counsel, and because the case was having a cluttering effect on the court's calendar, this court, as the initial trial judge, recused sua sponte. The *Craig* case is an extreme example of plaintiff-inspired delay.

have vitality of their own in the context of the ends sought. We today suspend the rule because experience shows that the ends sought run too tight a gauntlet through due process, by denial of a forum to assess fault for the delay sought to be avoided. In short, rule 238 has become an uncontestable presumption that all fault lies with a defendant. There are too many reasons why such is not always the case; and what is not always so may not be irrebuttable when a penalty follows.

"Having had now the opportunity for observation of the workings of rule 238, and being presented herein with a factual context which frames in sharp relief the rule's inequitable operation, we direct that those mandatory provisions of rule 238 which assess delay damages against defendants without regard to fault are suspended as of this date for all cases now pending in the courts of this commonwealth, and for any cases instituted hereafter." *Craig* at 65, 515 A.2d at 1353.

It is thus impliedly and correctly argued that the rule is no longer mandatory and that fault must or may be considered. But that is only a part of the entire picture.

In the *Craig* case, our Supreme Court held that the mandatory aspect of rule 238 was suspended and that the lower court had to consider the relative responsibilities of the parties for delay. The court stated:

"In making a decision on a plaintiff's entitlement to delay damages the mere length of time between the starting date [for calculating rule 238 damages] and the verdict is not to be the sole criterion. The fact finder shall consider: the parties' respective responsibilities in requesting continuances, the parties' compliance with rules of discovery; the respective responsibilities for delay necessitated by the

joinder of additional parties; and other pertinent factors." *Craig* at 66, 515 A.2d at 1353.

*Craig* now requires the trial judge to hold a post-trial hearing to determine whether there is any significant or governing fault for delay and also to determine whether it is appropriate to assess and award rule 238 delay damages.[5]

In the *Craig* case, the Supreme Court stated per Mr. Justice McDermott: "We do not overrule the rationales of *Laudenberger,* for they have vitality of their own in the context of the ends sought." *Craig* at 65, 515 A.2d at 1353.

Thus, it continues to be the policy and purpose and rationale of rule 238 and the law to encourage and promote not only settlement of claims but early settlement of claims in order to ease the problems of court congestion. The second policy and purpose and rationale of rule 238 is to provide compensation to the plaintiff for the inability to utilize funds which are rightfully due to the plaintiff.

In a real sense there is a concomitant third policy and purpose and rationale of rule 238 to the effect that a defendant should not be rewarded for a failure to endeavor to settle a lawsuit in a timely fashion; that a defendant should not be permitted to be unjustly enriched because it is enabled to protract litigation.[6] In *Laudenberger,* it was made clear

---

5. The Pennsylvania Rule 238 provision for pre-judgment interest has been regarded as one of the fairest amongst those jurisdictions which provide for pre-judgment interest. See Pre-judgment Interest in Personal Injury. Wrongful Death and Other Actions, 30 Trial Lawyer's Guide, 105–228 (Summer 1986).

6. See Comment, "Automatic Assessment of Delay Damages Suspended — *Craig v. Magee Memorial Rehabilitation Hospital*," 60 Temp. L.Q. 389 (1987) for a competent review of the *Craig* case and review of interest payable under Pennsylvania law.

that prejudgment interest is not awarded and should not be awarded for purposes of punishment, but rather because the plaintiff suffers a real loss from a deprivation of use of funds which rightfully should have been earlier paid to the plaintiff.

In its recitation that the length of time the case was pending was not "the sole criterion," the court recognized that the length of time was, indeed, *a* factor. The burden of trying to settle cases in good faith is not placed solely on the plaintiff. A defendant must also act with fidelity and responsibility to a judicial system which is threatened with an overwhelming and seemingly intractable backlog.

We recognize that in a congested court system there will be extended delays that are not chargeable to either plaintiff or defendant. That does not mean that there is no obligation to try to effect a settlement. *Laudenberger* makes it clear that a defendant cannot sit idly by and take profitable advantage of the system's burdens and delays and thereby increase those burdens and delays.

We must bear in mind that there may be many cases in which there is no fault in the sense of the profit motive or in the sense of bad faith or in the sense of hard bargaining against the injured and the needy. In the absence of that style "fault," we must bear in mind that as an overwhelming general rule the defendant (especially where there is insurance coverage or where the defendant is a large self-insurer) is in control of rule 238 liability and can terminate such liability by making an appropriate settlement offer in accordance with the terms of rule 238.

In *St. Peter's Episcopal Church v. Barkus,* C.P. of Luzerne County, no. 3664-C of 1983, Judge Gifford Cappellini pertinently stated:

"It is our opinion that any delay caused by what

the defendants term the 'trial process' is in reality attributable to the defendants. Defendants' unreasonable refusals to pay what was owed to plaintiff are the very reasons why dockets have become cluttered and where there is congestion in the courts. No defendant can reasonably be heard to complain of delay in the trial process being attributable to anyone other than the defendant who fails to make reasonable settlement offers or no offer at all. Thus, it is our opinion that for the purposes of rule 238, the delay of two years, 11 months and one week in the instant matter is wholly the fault of the defendants."

It is not reasonable or appropriate or workable to expect the trial court to measure each "bit of delay" that may occur during the years of litigation.[7] The trial court cannot undertake to make daily, monthly or annual determinations of entitlement to delay damages. Only delay of significance and sufficient significance would justify forfeiture of a plaintiff's right (in whole or in part) to be compensated for his loss of use of monies payable for his injuries. To be significant, in general, it should appear that absent plaintiff-delay the chances of settlement would have been materially better.

In this case, we need not consider or try to enumerate all of the factors which could be perti-

7. See however, for comparison and for example, *Welsh v. City of Philadelphia*, 16 Phila. Rep. 30 (1987) wherein Judge Berel Caesar made a partial deduction for plaintiff-delay even though the delay was for legitimate reasons. Judge Caesar stated, "this court in an abundance of caution, will deduct this time from the final award." We recognize that "abundance of caution" may sometimes be a yielding to a defendant's capacity for excessive litigation and appeals. Philosophically we deem it more appropriate to exercise caution in favor of the injured, the handicapped and the lesser-advantaged and that the court not yield to "threats" of "more litigation."

nent in the vast variety of cases which could arise. Obviously in some cases it will be necessary to evaluate relative responsibilities for delay and to evaluate relative efforts to effect a settlement and to evaluate the conduct of the parties with regard to the state of court congestion in particular differing counties or localities. The language in *Laudenberger* recognized and cautioned us that "[it] is [frequently] in the best interest of the defendants to protract the litigation process as long as possible, so that they may benefit from the funds rightly owing to the plaintiffs." *Landenberger* at 69, 436 A.2d at 156.

The word "fault" can be misleading. Where, as between two parties, one party makes a considerable profit and the other party suffers only delay and loss, it must be considered and perhaps it may be assumed that the profit-making technique is volitional and wilful. There is no reason whatsoever for not attributing so-styled "fault" to a defendant's conduct where the defendant makes no affirmative efforts (whatsoever) to settle a case. The attribution of fault is even stronger when defendant fails to respond to reasonable settlement efforts and does nothing to participate in the settlement process.

It is appropriate to consider whether defendant is insured or not and whether, at the bottom line, an insurance carrier has been using the funds due as damages to a plaintiff for its own profitable investment purposes. It is but reasonable to bear in mind that long periods of delay due to court congestion work to the great advantage of insurance carriers when one considers that the insurance carriers gets the benefit of compounding its interest, whereas a plaintiff cannot receive compounded interest whether it be by way of 10 percent under rule 238 or by way of the statutory six percent after verdict.

Particularly in times of high interest rates, a failure by a defendant to effect a reasonable settlement or to make any efforts to effect a reasonable settlement may be found to be a deliberate policy of trying to take advantage of the backlog and a deliberate policy of trying to profit from the delay. In this case defendant's profit from delay glares from the record.

Rule 238 does not apply after the verdict was entered. Therefore, in any possible event, interest on the verdict has been limited to six percent since July 25, 1984. It is sufficient to note that the defendant has continued to have the more profitable use of this money for more than three years during the post-trial and appellate processes.

In the consideration of the factor of delay, it is now necessary to also consider the role of plaintiff-delay in the total picture. Thus we should ordinarily consider the reasonableness of a plaintiff's demands. In this case, plaintiff's demands were quite reasonable and, further, plaintiff, in any event, made it quite clear that the subject of possible settlement was open to further discussions and negotiations. Defendant did not wish to discuss or negotiate and it did not discuss or negotiate until shortly prior to trial and verdict. The fact that a plaintiff may open discussions with a seeming high demand is not to be taken as a factor for delay. The settlement process itself must be reviewed by the trial judge. In this case, there was not much of a settlement process to review because of the recalcitrance of defendant.

In this case, plaintiff was very seriously and extensively injured. The court is of the opinion that the verdict was quite modest. It is significant that defendant did not contend that the verdict was excessive and the plaintiff initially contended that

the verdict was inadequate. Apparently, in the hope of an earlier recovery, plaintiff abandoned his contention of inadequacy. It is against this background (in part) that we consider defendant's last-minute offers. The sharp increases in offers in hundreds of thousands of dollars as the trial of the case progressed is an indication of defendant's tactics of delay and its tactics of endeavoring to achieve a last-minute settlement overly favorable to defendant.

Although rule 238 grants a defendant a defense if an offer is within 125 percent of the verdict, in the evaluation of reasonableness of offer and reasonableness of settlement efforts, we may also consider the probabilities or non-probabilities of an assessment of rule 238 damages. It must be borne in mind that a settlement not only comprehends the disposition of any claims for delay damages and costs. We have no difficulty in concluding that defendant deliberately chose to risk litigation. It had a clear right to do that. There is also a concomitant clear duty to pay delay damages.

At least in congested court systems such as Philadelphia, rule 238 is a major weapon in the court's arsenal for disposition and settlement of cases. As a general rule, the presence of a rule 238 claim enables the trial court to help promote settlements. To a probably surprising extent such delay damages are not really included in the settlement-dispositions of cases. It is a valuable bargaining chip in the real settlement process. At most, it calls upon defendant to consider that it may be called upon to forego the automatic profits of delay. It is imperative that rule 238 have a continued vitality and that it not be emasculated by pretentious complaints.

It is not necessary in this opinion to consider at great length the suggestion by Mr. Justice (later

Chief Justice) Samuel Roberts in his concurring opinion in *Laudenberger* that there supposedly should be parallel standards of reasonableness in settlement negotiations; that a "Failure of either party to make a reasonable effort to settle should result in the imposition of similar sanctions." It is sufficient to note that, inter alia, (1) the plaintiff group and the defendant group are *not* similarly situated with regard to the problems and consequences of delay; (2) it is the defendant group that virtually automatically profits from delay, while the plaintiff group automatically sustains loss from delay and the consequent inability to utilize funds that rightfully belong to them; (3) the defendant group, in reality, is overwhelmingly composed of insurance carriers [and large self-insurers] who use the court system virtually as an asset of their business on a regular and continuing basis; (4) the realities of dire need on the part of plaintiffs, and economic power to simply do nothing on the part of defendants, place them in unequal positions in the settlement process.

Of collateral significance in the evaluation of rule 238 is the fact that the legislature has not sought to interfere in any way with the decision in *Laudenberger v. Port Authority,* 496 Pa. 52, 436 A.2d 147 (1981) from 1981 to the present time. The legislature has taken no steps to change, modify or limit the applicability of rule 238.

## ORDER

And now, November 19, 1987, upon consideration of the entire record and upon consideration of a rule 238 evidentiary hearing as mandated by the decision of the Supreme Court of Pennsylvania in *Craig v. Magee,* and as directed by order of the

480

Superior Court, it is hereby ordered and decreed that rule 238 damages are assessed in the amount of $374,571.36 to be paid by the defendant Allied Van Lines Inc. The assessment of delay damages shall be effective as of the date of the verdict on July 25, 1984 and shall bear interest at the rate of six percent from that date.

Further, upon consideration of the withdrawal by Allied Van Lines Inc. of its motion to stay and pursuant also to agreement between counsel for plaintiff and counsel for defendant, the foregoing decision with regard to assessment of rule 238 damages is hereby certified for immediate appeal.